IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| NEIGHBORHOOD NETWORKS PUBLISHING INC. d/b/a/ N2 PUBLISHING,<br>    Plaintiff, | § § § § § | |
| versus | § § | Civil Action No. 16-1187 _____ |
| COMANCHE TRACE RANCH & GOLF CLUB, LLLP and TREVOR HYDE,<br>    Defendants | § § § § § | |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing ("N2"), who, for and as its Complaint against Defendants, Comanche Trace Ranch & Golf Resort, LLLP ("the LLLP") and Trevor Hyde, allege the following:

### PARTIES

1.

Plaintiff, N2, is a Delaware corporation with its principal place of business in North Carolina.

2.

Defendant, the LLLP, is a Colorado limited liability limited partnership.

3.

On information and belief, the LLLP's general partner is Comanche Trace, LLC, a Colorado limited liability corporation, and the LLLP's limited partner is Trevor Hyde, a Texas resident. On information and belief, the managing member of Comanche Trace, LLC is HMB Partners, Inc., a Colorado corporation with its principal place of business in Colorado.

4.

On information and belief, none of the members or partners of the LLLP or of Comanche Trace, LLC, are residents of Delaware or North Carolina.

5.

Defendant, Trevor Hyde, is a person of the full age of majority, a resident of Kerr County, Texas, and the President of the LLLP.

**JURISDICTION AND VENUE**

6.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the Constitution, laws, or treaties of the United States; pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States; pursuant to 28 U.S.C. § 1338, because this is a civil action arising under an Act of Congress relating to trademarks and is also a claim of unfair competition joined with a substantial and related claim under the trademark laws; and pursuant to 28 U.S.C. § 1367, as to the related state law claim asserted in this Complaint.

7.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because the Western District of Texas is a judicial district in which a substantial part of the events or omissions giving

rise to the claim occurred. The Austin Division is proper because at least one cause of action, namely, cancellation of a Texas trademark has a mandatory venue provision of Travis County, Texas, pursuant to the Tex. Bus. & Comm. Code sec. 16.106.

## FACTS

8.

The LLLP has developed a planned community in Kerrville, Texas, that it and the residents of the planned community, along with others, call Comanche Trace ("Comanche Trace").

9.

The phrase, "Comanche Trace," is another name for the Comanche Trail, a geographic region of Texas consisting of a network of parallel and branching trails or travel routes that the nomadic Comanche nation established from its summer hunting grounds to the Rio Grande river. The Comanche Trace residential development is located in the same geographic region of Texas as the Comanche Trace trails.

10.

N2 publishes and distributes customized magazines for residential neighborhoods throughout the United States.

11.

N2 distributes over 900 publications each month and is one of the fastest growing private media companies in the country.

12.

Each magazine focuses on local news, neighborhood events, updates about residents' children and families, articles about residents' pets, and other human interest stories about the neighborhood in which the magazine is distributed.

13.

N2 engages independent contractors, called area directors, to offer publishing services to designated neighborhoods and to sell advertising for the magazines to businesses (referred to as "business partners") which have, or want to have, customers in those neighborhoods.

14.

Benjamin R. Smith, through his company, Generation 1 TV, Inc., is the area director for Kerrville, Texas.

15.

Area directors work directly with neighborhood residents for the residents to develop user generated content, *i.e.*, write articles and provide pictures, for the magazines.

16.

Area directors also organize social events for their designated neighborhoods, to build a sense of community among the residents and introduce them to the magazine's business partners.

17.

Through the neighborhood magazines and social events, the residents get to know their neighbors and feel connected to them and to the magazine's business partners in meaningful ways.

18.

Mr. Smith's initial designated neighborhood in Kerrville is the Comanche Trace residential development. In May of 2016, as area director, Mr. Smith began meeting with

Comanche Trace residents and potential advertisers about the magazine that N2 planned to distribute to Comanche Trace residents

19.

Mr. Smith also met with representatives of the homeowners' association, the Comanche Trace Ranch Community Association, Inc. (the "HOA"), and with representatives of the LLLP (and attempted to meet with Mr. Hyde), to attempt to establish good relationships with them and, if possible, to partner with the HOA and the LLLP in the publication of the magazine to be distributed to Comanche Trace residents.

20.

Shortly after Mr. Smith began meeting with residents and potential advertisers about the magazine to be distributed to Comanche Trace residents, the LLLP's attorneys sent a letter to Mr. Smith asserting that "Comanche Trace is a name owned by our client and any use or reference to such name without the prior written consent of our client is unlawful and our client will pursue all available rights and remedies concerning the same." The letter further threatened a lawsuit against Mr. Smith if he failed to comply with the LLLP's demands.

21.

Knowing that the LLLP did not "own" the name "Comanche Trace" and that no one needs the LLLP's permission to use the phrase "Comanche Trace" when referring to the Comanche Trace neighborhood or its residents, Mr. Smith continued to approach neighborhood.

22.

N2 trains its area directors to clearly and explicitly disclaim any association with a neighborhood's developer or homeowners' association, unless N2 has a publication agreement with the developer or homeowners' association.

23.

When Mr. Smith contacted Comanche Trace residents and potential advertisers, he never claimed to be associated with or endorsed by the LLLP or the HOA.

24.

Initially, Mr. Smith and his family resided in Comanche Trace, in a home that Mr. Smith's parents owned.

25.

In a letter dated July 11, 2016, Mr. Hyde, as President of the HOA, wrote to residents of Comanche Trace.

26.

In his July 11, 2016 letter to Comanche Trace residents, Mr. Hyde falsely stated that "there is an exclusive right of use of the name of the development" and "the use of the name Comanche Trace Ranch or any derivative of such name, logo or other depiction in any printed or promotional material is prohibited."

27.

In his July 11, 2016 letter to Comanche Trace residents, Mr. Hyde also falsely stated that "Mr. Smith continues to misrepresent himself to the community as a whole as well as the surrounding areas with people we have done business with and developed relationships with."

28.

In his July 11, 2016 letter to Comanche Trace residents, Mr. Hyde also stated that Mr. Smith "is in violation of our CC&R's [Covenants, Conditions and Restrictions] . . . which prohibits door-to-door visits to promote any business activity."

29.

In his July 11, 2016 letter to Comanche Trace residents, Mr. Hyde also stated that Mr. Smith "has been informed he cannot use the Comanche Trace name," but Mr. Hyde did not disclose that no one is legally barred from using the words "Comanche Trace" to describe the Comanche Trace neighborhood or its residents.

30.

In his July 11, 2016 letter to Comanche Trace residents, Mr. Hyde also falsely stated that "Mr. Smith has been disruptive to our office, staff and the business community as a whole."

31.

In a letter dated July 20, 2016, Mr. Hyde, as President of the LLLP, wrote to business owners in Kerrville.

32.

In his July 20, 2016 letter to business owners, Mr. Hyde stated that he wanted "to inform you of a gentleman named Benjamin Smith of N2 Publishing trying to sell ads for a publication with a perceived connection with Comanche Trace."

33.

In his July 20, 2016 letter to business owners, Mr. Hyde also stated: "Comanche Trace will not allow any use of our trademarked names, logos and brands without prior written consent," but Mr. Hyde did not disclose that there is no legal prohibition against anyone using the words "Comanche Trace" to describe the Comanche Trace neighborhood or its residents, with or without the LLLP's consent.

34.

In his July 20, 2016 letter to business owners, Mr. Hyde also falsely stated that "Mr. Smith has been disruptive to our office, staff and the business community as a whole."

35.

In addition, agents of the LLLP, including, on information and belief, Mr. Hyde, falsely told Comanche Trace residents, potential advertisers, and the magazine's business partners that Mr. Smith's business activities are a "scam" and that publication of the magazine for Comanche Trace residents "was never going to happen."

36.

As a result of the discomfort caused by Mr. Hyde's, the LLLP's, and the HOA's actions, and because of the restrictive covenants that Mr. Hyde, the LLLP, and the HOA were citing against Mr. Smith's activities, Mr. Smith and his family moved out of the Comanche Trace neighborhood.

37.

On August 1, 2016, the LLLP filed suit against Mr. Smith in the 216th Judicial District Court in Kerr County, Texas, bringing a meritless claim for alleged trademark infringement on the ground that Mr. Smith "has used the Trademark [*i.e.*, the words, 'Comanche Trace'] without the consent of" the LLLP, such as by stating that "he is working with the residents of Comanche Trace."

38.

Also on August 1, 2016, without providing notice or an opportunity to be heard, the LLLP wrongfully obtained a Temporary Restraining Order against Mr. Smith prohibiting him

from using "the name and Trademark 'Comanche Trace' in any form or fashion relating to any business venture in which he is involved."

39.

On August 24, 2016, just prior to the hearing on the LLLP's application for temporary injunctive relief, the LLLP and Mr. Smith settled the LLLP's application for temporary injunctive relief by Mr. Smith's agreement to disclaim any association with the LLLP or the HOA in any oral and written communications with potential advertisers or residents. Since that time, Mr. Smith consistently has disclaimed any association with the LLLP or the HOA in any oral and written communications with potential advertisers or residents.

40.

N2 published and distributed by mail to the residents of Comanche Trace the first issue of its magazine, *Living at the Trace*, in September, 2016.

41.

Shortly thereafter, Mr. Hyde on behalf of the LLLP sent an e-mail to Comanche Trace residents.

42.

In this e-mail Mr. Hyde stated that the LLLP was offering to "assist" Comanche Trace residents to be removed from the mailing list for the magazine.

43.

Mr. Hyde included in this e-mail a link to an on-line form on the LLLP's website for residents to fill out and electronically sign, asking to be "removed from the mailing list of your publication, currently entitled *Living at the Trace*, and from all further mailings, contacts, or solicitations that you may send to me. Please immediately remove me from your mailing list, and stop all mailings, phone calls, emails, or solicitation of any kind."

44.

Mr. Hyde offered to "coordinate sending" the forms "along to the publisher." If a resident of Comanche Trace fills out the form, the LLLP transmits the request to Mr. Smith.

45.

In a letter dated October 21, 2016 to business partners of N2, Mr. Hyde, as "President," presumably of the LLLP, falsely stated that "we have filed a lawsuit against Ben Smith on the basis that his usage of the name Comanche Trace is misleading and not permitted" and that Mr. Smith "is using Comanche Trace's name and reputation in our community to mislead advertisers."

46.

In his October 21, 2016 letter, Mr. Hyde also falsely stated that "we did come to an agreement that there should be disclaimer language in the magazine stating that there is no affiliation between the magazine and" the HOA or the LLLP and that the magazine failed "to specifically adhere to that agreed upon language."

47.

In his October 21, 2016 letter, Mr. Hyde also stated that legal action would be pursued against the magazine "by any means necessary to ensure that the reputation we have spent over a decade building in this community is not tarnished" without disclosing that neither N2 nor Mr. Smith had done or said anything to tarnish the reputation of the LLLP or the HOA.

48.

As a result of the LLLP's and Mr. Hyde's wrongful actions and false, misleading, defamatory and disparaging statements, some of the magazine's business partners canceled or sought to cancel their advertising contracts with N2.

49.

Also as a result of the LLLP's and Mr. Hyde's wrongful actions and false, misleading, defamatory and disparaging statements, some of the magazine's potential advertisers decided not to become business partners with N2.

50.

Also as a result of the LLLP's and Mr. Hyde's wrongful actions and false, misleading, defamatory and disparaging statements, many potential advertisers will not return Mr. Smith's telephone calls or agree to meet with Mr. Smith to discuss a potential advertising relationship with N2.

51.

Also as a result of the LLLP's and Mr. Hyde's wrongful actions and false, misleading, defamatory and disparaging statements, many Comanche Trace residents will not agree to submit articles, pictures, or other content to be published in the magazine for Comanche Trace residents.

52.

Also as a result of the LLLP's and Mr. Hyde's wrongful actions and false, misleading, defamatory and disparaging statements, many Comanche Trace residents have declined to attend social events organized and hosted by Mr. Smith on behalf of the magazine.

53.

One Comanche Trace resident had agreed to be photographed for the front cover of an issue of the magazine for Comanche Trace residents, but Mr. Hyde and other agents of the LLLP and the HOA contacted this resident and tried to convince her not to be involved with the magazine. As a result, this resident changed her mind and decided not to participate in the photo shoot or appear on the front cover of the magazine.

54.

Similarly, another Comanche Trace resident offered to write a financial advice column for the magazine for Comanche Trace residents, but.as a result of the LLLP's and Mr. Hyde's wrongful actions, and false, misleading, defamatory, and disparaging statements, this resident changed his mind and informed Mr. Smith that he would not do so.

55.

As a result of the LLLP's and Mr. Hyde's wrongful actions and false, misleading, defamatory, and disparaging statements,, a Comanche Trace resident who permitted the magazine to publish an article about her and her pets in the magazine's first issue stopped talking with Mr. Smith and requested to be removed from the magazine's mailing list.

**Count 1 – Declaratory Judgment (Lanham Act)**

56.

N2 realleges and reavers the allegations set forth in the preceding paragraphs as if repeated herein in their entirety.

57.

This is a claim for declaratory judgment, pursuant to 28 U.S.C, §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure, to determine an actual case or controversy between N2, on the one hand, and the LLLP and Mr. Hyde, on the other hand, under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.

58.

N2 is entitled to a Declaratory Judgment declaring that it has not infringed any trademark rights that the LLLP asserts in the phrase, "Comanche Trace," under the Lanham Act because, *inter alia*, the phrase is merely geographically descriptive and has not achieved secondary meaning so as to make it distinctive, and it is a fair use for N2 and its agents to refer to the

Comanche Trace neighborhood and the Comanche Trace residents by using the words "Comanche Trace" when conducting business activities.

## Count 2 – Declaratory Judgment

### (Texas common law of trademark and Tex. Bus. Com. Code § 16.102)

59.

N2 realleges and reavers the allegations set forth in the preceding paragraphs as if repeated herein in their entirety.

60.

This is a claim for declaratory judgment, pursuant to 28 U.S.C, §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure, to determine an actual case or controversy between N2, on the one hand, and the LLLP and Mr. Hyde, on the other hand, under the Texas common law of trademark and Tex. Bus. Com. Code § 16.102 (Infringement of Registered Mark).

61.

N2 is entitled to a Declaratory Judgment declaring that it has not infringed any trademark rights that the LLLP asserts in the phrase, "Comanche Trace," under the Texas common law of trademark and Tex. Bus. Com. Code § 16.102 (Infringement of Registered Mark), because, *inter alia*, that phrase is primarily merely geographically descriptive or deceptively misdescriptive of the LLLP's goods or services, rather than distinctive, and it is a fair use for N2 and its agents to refer to the Comanche Trace neighborhood and the Comanche Trace residents by using the words "Comanche Trace" when conducting business activities.

## Count 3 – Cancellation of State Trademark Registrations

62.

N2 realleges and reavers the allegations set forth in the preceding paragraphs as if repeated herein in their entirety.

63.

The LLLP has registered "Comanche Trace" as a word mark with the Texas Secretary of State under Registration Nos. 801650731, 801650724, 801650715, 801650727, 801650702, and 801650708.

64.

When the LLLP applied to register "Comanche Trace" as a word mark, the Texas Office of the Secretary of State initially rejected the registration applications, stating that, under Tex. Bus. & Com. Code § 16.051(a)(5)(B), a mark that is primarily merely geographically descriptive or deceptively misdescriptive of the applicant's goods or services cannot be registered, and finding that the proposed "Comanche Trace" mark was primarily geographically descriptive or deceptively misdescriptive.

65.

In response to the Secretary of State's objections, the LLLP misrepresented that the name "Comanche Trace" was arbitrarily chosen in 1978 to describe an already existing location and Mr. Hyde, as President of the LLLP, misrepresented in a Trademark Affidavit filed with the Office of the Secretary of State that, to the best of his knowledge, the owner of a horse ranch formerly located where the LLLP's businesses are situated arbitrarily chose the name, "Comanche Trace."

66.

Because "Comanche Trace" is primarily merely geographically descriptive or deceptively misdescriptive of the applicant's goods or services, and has not achieved secondary meaning so as to make it distinctive, and further because of the false and misleading misrepresentations by the LLLP and Mr. Hyde on the trademark registration applications causing the registrations to be granted improperly or obtained fraudulently, the Court should cancel the LLLP's state trademark registrations for "Comanche Trace," Registration Nos. 801650731, 801650724, 801650715, 801650727, 801650702, and 801650708.

### Count 4 – Tortious Interference with an Existing Contract

67.

N2 realleges and reavers the allegations set forth in the preceding paragraphs as if repeated herein in their entirety.

68.

The LLLP and Mr. Hyde willfully, intentionally, and with malice interfered with valid advertising contracts of N2, proximately causing injury to N2, actual damage, and loss.

### Count 5 – Tortious Interference with Prospective Relations

69.

N2 realleges and reavers the allegations set forth in the preceding paragraphs as if repeated herein in their entirety.

70.

The LLLP and Mr. Hyde intentionally, and with malice, interfered with prospective business relationships of N2 with third parties with whom there was a reasonable probability that

N2 would have entered into business relationships, proximately causing injury to N2, actual damage and loss.

### Count 6 – Defamation

71.

N2 realleges and reavers the allegations set forth in the preceding paragraphs as if repeated herein in their entirety.

72.

The LLLP and Mr. Hyde negligently or with fault published false and defamatory statements of fact about N2, causing N2 to suffer damages.

### Count 7 – Business Disparagement

73.

N2 realleges and reavers the allegations set forth in the preceding paragraphs as if repeated herein in their entirety.

74.

The LLLP and Mr. Hyde published false, disparaging words about N2 with malice and without privilege, causing special damages.

75.

The LLLP and Mr. Hyde knew that the false and disparaging statements they made about N2 were false, acted with reckless disregard for whether the statements were true, acted with ill will and/or intended to interfere with N2's economic interests.

### JURY DEMAND

Plaintiff hereby requests a trial by jury and tenders the jury fee contemporaneously herewith.

## PRAYER FOR RELIEF

Wherefore, Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing prays that this Court enter a Judgment:

(1)  Declaring that Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing and its agents have not infringed any trademark rights that Comanche Trace Ranch & Golf Resort, LLLP, asserts in the words, "Comanche Trace," under the Lanham Act, and that it is a fair use for Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing and its agents to refer to the Comanche Trace neighborhood and the Comanche Trace residents by using the words "Comanche Trace" when conducting business activities;

(2)  Declaring that Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing and its agents have not infringed any trademark rights that Comanche Trace Ranch & Golf Resort, LLLP, asserts in the words, "Comanche Trace," under the Texas common law of trademark and Tex. Bus. Com. Code § 16.102, and that it is a fair use for Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing and its agents to refer to the Comanche Trace neighborhood and the Comanche Trace residents by using the words "Comanche Trace" when conducting business activities;

(3)  Cancelling Comanche Trace Ranch & Golf Resort, LLLP's Texas trademark registrations for the word mark, "Comanche Trace," Registration Nos. 801650731, 801650724, 801650715, 801650727, 801650702, and 801650708;

(4)  Finding that Comanche Trace Ranch & Golf Resort, LLLP and Trevor Hyde have tortiously interfered with existing contracts of Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing and awarding Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing damages in an amount to be proven at trial;

(5) Finding that Comanche Trace Ranch & Golf Resort, LLLP and Trevor Hyde have tortiously interfered with prospective business relations of Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing and awarding Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing damages in an amount to be proven at trial;

(6) Finding that Comanche Trace Ranch & Golf Resort, LLLP and Trevor Hyde have defamed Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing and awarding Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing damages in an amount to be proven at trial;

(7) Finding that Comanche Trace Ranch & Golf Resort, LLLP and Trevor Hyde have tortiously disparaged the business of Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing and awarding Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing damages in an amount to be proven at trial;

(8) Awarding Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing exemplary or punitive damages, pre- and post-judgment interest, attorneys' fees, and costs;

(9) Entering a preliminary and then a permanent injunction enjoining Comanche Trace Ranch & Golf Resort, LLLP and Trevor Hyde from tortiously interfering with the contracts and prospective relations of Neighborhood Networks Publishing, Inc. d/b/a N2 Publishing; and

(10) Awarding Neighborhood Networks Publishing, Inc., d/b/a N2 Publishing any other relief that is just and proper.

PHELPS DUNBAR LLP


BY: /s/ Peri H. Alkas
Peri H, Alkas
Texas Bar No. 00783536
500 Dallas Street, Suite 1300
Houston, Texas 77002
Telephone: 713 626-1386
Telecopier: 713 626-1388
Email: peri.alkas@phelps.com

and

Mary Ellen Roy
(pro hac vice application to be filed)
Dan Zimmerman
Texas Bar No. 22265550
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: roym@phelps.com
dan.zimmerman@phelps.com


**KELLY & ASSOCIATES**

Robt. Kelly
Texas Bar No. 11230600
222 Sidney Baker South Suite 410
Kerrville, Texas 78028
Telephone: 830.792.6161
Telecopier: 830.367.3668
Email: rob@rkellylaw.com

**ATTORNEYS FOR NEIGHBORHOOD NETWORKS PUBLISHING INC. d/b/a/ N2 PUBLISHING**

PD.20279822.1